on behalf of the people of the state of Illinois. Morning, good morning to both of you. I'm sorry. Each side will have about 20 minutes, 15, 20 minutes to present argument. And from that, counsel, you may save some time out for rebuttal. Counsel, you may begin your argument. May it please the court, counsel, Stanley Ward was convicted of being an armed habitual criminal after a bench trial and sentenced to eight years in prison. He is now serving a ten-year sentence. He is appealing his conviction on the grounds that he was denied his constitutional right to cross-examine his accusers and present evidence in his own defense. These claims come from the state's witnesses' testimony, specifically the testimony of Officer Grayson and Sergeant Robinson, the only witnesses to testify in this case. The officers essentially testified that they saw a traffic violation, stopped Mr. Ward's car. When he got out, he was angry, allegedly spinning around, and they saw a handgun in his back pocket. That's essentially the evidence in this case. There is no DNA evidence tying the gun to Mr. Ward. There are no fingerprints. There were no other witnesses. There's no statement from Mr. Ward admitting that he committed a crime. And there's no recording from the police officers' dash cam videos or body cameras. There were no recordings at all in this case. There was a gun recovered, though, wasn't there? There was, Your Honor. There was a gun recovered. The only evidence tying that gun to Mr. Ward was the testimony of these two officers. Importantly, Officer Grayson was found to be completely incredible. And he was found incredible because he was asked by the state during his direct examination if he had retired from the Robins Police Department. He testified that he had retired from the Robins Police Department and then was asked on cross-examination if he had actually been fired. He initially said that he had retired from the Robins Police Department on cross-examination, but eventually admitted that he had been fired. However, he denied knowing why he had been fired. He denied getting a letter explaining why he had been fired. He denied knowing Charlotte Jones, who was Mr. Ward's sister, or that Charlotte Jones had filed a complaint against him, which resulted in his dismissal. Later, trial counsel introduced his personnel file. Importantly, trial counsel didn't have access to the personnel file. He had a subpoena to the Robins Police Department to get it. And the chief of police for the Robins Police Department provided the court with the personnel file. And that established that Officer Grayson was, in fact, lying about his retirement and was lying about why he had been dismissed from the Robins Police Department. Charlotte Jones, Mr. Ward's sister. What did the report say? You're saying that the report said he was lying? Or did the report say he didn't finish his probationary period? Wasn't that why he was discharged? He was, according to the record, and we don't have the report, at least it wasn't provided to my office as far as I understand it. Your office didn't represent the defendant in the trial? That's correct, Your Honor. But my understanding was that the court found him to be incredible entirely because he was lying about knowing Charlotte Jones, knowing the fact that she had filed a complaint against him and that he had retired from the police department, that, in fact, he had been dismissed. So trial counsel was absolutely correct in asserting that the officer was lying about at least his retirement and provided evidence to back that up. So once Officer Grayson was found incredible, the only evidence remaining against Stanley Ward was the testimony of Sergeant Robinson. Which the court found was sufficient to establish proof beyond a reasonable doubt. The evidence in the record, yes. Basically, the testimony of one witness of credible is sufficient to support proof beyond a reasonable doubt. If credible, under the right circumstances, yes. But didn't the trial judge make that determination? Aren't you asking us to review or redo the trial? She made a specific finding at the time. She said, I don't believe this one witness, but I definitely believe this other witness, and therefore I believe the state has met its burden of proof. We're not raising a reasonable doubt argument, Your Honor. Did she make that determination, though? She did make that determination that the officer's testimony was sufficient, but she didn't have a complete picture and she didn't have all of the evidence in the case. Do we have it here? No. And are we supposed to have it here? A complete picture? Yes. Isn't it the burden to show us that there's something in that report that would suggest that the other sergeant was not truthful? Short answer, no, Your Honor. And the reason for that is twofold. First, it's the state's burden to prove guilt beyond a reasonable doubt. I'm not talking about proof beyond a reasonable doubt. I'm talking about making an offer of proof, preserving a record, so that the court can actually look at what you are claiming was an error. Sure. I think that this Court should look to People v. Slayton for the answer to that question. And in People v. Slayton, that was a similar case where trial counsel did not have access to the records that he wished to introduce on behalf of the defendant. In Slayton, the defendant was charged with robbery, but the state had initially declined to charge the defendant after the victim was re-interviewed by the state. The defense did not know what the re-interview resulted in, what the victim had told the state, or why the state initially declined to pursue the case, and did not have access to the state's felony review file. And so, therefore, couldn't find out what the victim had said. What is the evidence in Slayton? The evidence in Slayton? The evidence that you're relying on. Why is Slayton? Why is Slayton relevant? Like this case, though. So, it sounds, as I understand it, this Court is concerned that trial counsel did not make a sufficient offer of proof as to what was in the specific folder that he wanted an in-camera review. Right. Sergeant Robinson's personnel file. Slayton stands for the proposition that trial counsel doesn't need to know what's in it to demand an in-camera review, and this Court doesn't need to have the file or have an explanation of what's in the file to remand the case for that in-camera review that should have happened. Yeah. What I want to know from you is, what is there in the record that suggests that there was any relevance to this other report? Ah. So, two things. For the first portion of our argument, we're arguing for a new trial because trial counsel was completely barred from asking follow-up questions on an issue that was brought up during direct examination. There is no law that the State can cite that would suggest that the State can ask a question, raise a topic during direct examination, and then bar follow-up questions by objecting. It should not have had standing to object once it introduced evidence that Sergeant Robinson had retired when trial counsel wanted to ask follow-up questions on cross-examination. The State did not have standing to object at that point, and the Court should not have sustained an objection. So there were questions that the State asked that would have caused counsel at the trial to question whether or not the witness was credibly testifying. Well, we don't know why trial counsel knew that Officer Grayson was lying about his retirement. Similarly, we don't know why trial counsel … Well, we do know because there's actually a document in the record that explains that his sister had made a complaint against him, and I think there was something else in there about his probationary status as an officer. But there was actually an indication in this record about his sister filing a complaint against him. My question is in reference to Robinson, because the issue here is did Robinson not credibly testify during the trial? We don't know. We believe that Robinson was not credible when he testified at trial. What's the basis for that belief? Well, trial counsel asserted repeatedly as an officer of the Court that he believed that Sergeant Robinson was lying about his retirement. A lawyer can't stand there and say, I think he's lying. I would agree with this Court that on its own, in a vacuum, that would not be enough. But this didn't occur in a vacuum. Officer Grayson had been fired. That ended up being established. My question is in reference to Robinson. We already established there was a foundation based on Grayson. But where is the foundation as to Robinson's testimony not being credible? Well, first of all, the question was asked during Robinson's direct examination, and it was never put to a test. Trial counsel never even got to ask the question, were you actually fired or did you actually retire? And that's a right that a defendant has during cross-examination to test a topic that was brought up by the State. But more than that, there was nothing specifically. . . You're talking about collateral impeachment here. Isn't that what you're trying to talk about, collateral impeachment? I believe. . . Nothing to do with the issues of this case. I believe that the Court needs to separate the two issues specifically. The issue with whether a defendant has a right to cross-examine. . . You haven't answered my question. There's a concept we call collateral impeachment. Show me how this is not collateral impeachment. So collateral evidence is only collateral if it is relevant to the facts in the case introduced for the sole purpose of contradicting a witness's statement. That's People v. Santos, 211 Illinois, 2D395. In this case, we're dealing with evidence that an officer may have potentially been fired for misconduct. That's discipline. . . May have potentially been. Correct, Your Honor. In order to make valid offer of proof, you have to give us some proof. There has to be an offer, other than saying, one officer lied about his termination from this department. Therefore, or ergo, the sergeant did the same thing. That's really all you have, is that a lawyer saying, well, he lied, so the other guy must be lying. There's no evidence to support that. It's speculation. There's no suggestion at all in the record. There was no suggestion at all in the record in Slayton that there was exculpatory information in the state's felony review file. And the court very clearly said the defense attorney did not have access to that file and therefore could not do anything else but ask the courts to review the file to make a preliminary determination as to whether it was exculpatory and useful to the defendant. And because the court didn't take 10 minutes to do that, this court remanded the matter and asked the court to look at it. So in that case, the court knew that in the felony review folder, the state chose not to charge the defendant following a second interview. How did that work its way into the record? It was an assertion by defense counsel, but I'm not sure that defense counsel provided anything other than an assertion. And the state did in that case argue that. I don't know how the lawyer could have possibly have come up with the claim that the state initially chose not to charge the defendant following a second interview with the victim. That's not something that the lawyer was going to come up with. The lawyer here said basically one officer lied, therefore this officer lied. The lawyer never said in this case one officer lied, therefore this officer lied. No, but that's really all we have. That's the inference this court is making. But it's very possible that the lawyer had information from someone else. There was information about the one officer. He did have a complaint registered from the sister. I think that was the reason that he got – actually I thought the reason he was terminated was because he didn't complete some probationary period. Do you have any idea about that? All of that's in the personnel record that was sealed and reviewed in camera. I want to ask you a question about your inference. You keep mentioning that the lawyer had possibly an inference, right? Where in the record is there any indication of what this inference was? You're asking us to coldly and blindly follow this along, but we don't have anything. We don't have any motive. Why would this witness not be credible and understand? Where was the bias, right? I mean, he's no longer with the police department, so he's not going to try to create any favor with either side. So where is this inference that you keep referring to? Well, I think there's two potential issues there. One, was there a motive to fabricate the testimony wholesale in the first place? And I think it's clear that this is a very small community. We're talking about 5,500 people in Robbins, a very small community. There's nothing in the record. The trial judge didn't cut counsel off. The trial judge allowed counsel an opportunity to be heard on the issue. And there's nothing in the record indicating, well, we believe in blah, blah, blah. All right? There's nothing in there. There's nothing in the record to show us what the possible inference may have been. Well, the court did. The state immediately objected when trial counsel asked Sergeant Robinson if he had, in fact, been fired. The state objected. The court sustained that objection, and there was no following. Why can't the court sustain an objection that has no foundation whatsoever? The question was made in response to a topic that was raised by the state. That's absolutely correct. The state introduced the officer, asked him if he was still working, and he said he had retired. Something like that. And was unemployed and was only 51 years old. Yes, Your Honor. So then the next question is, based on nothing, you were fired, weren't you? Something like that, right? I'm not sure it was based on nothing, Your Honor. Well, what was it based on? I think Justice Reyes has asked you this a couple of times. What would it be based on? Well, the record says the officer was terminated. I don't have anything specifically in the record to point to which explains why trial counsel Doesn't that pose a problem here? We don't believe so, Your Honor. I think any time a topic is raised during direct examination, due process guarantees a litigant the right to explore that topic. And he absolutely had the right to ask the question. Now, with respect to whether the issue is collateral or not, we believe that an intent or a desire for renewed employment with the state in a law enforcement capacity or otherwise establishes that the witness had a motive to testify favorably for the state. But with respect to collateral or not collateral, that only involves evidence being introduced by the defendant. So that would be with respect to the personnel file that the defendant wanted to introduce. It doesn't come into play with respect to whether the defendant had a right to simply ask the question. You know, you can ask any question you want. The court gets to rule on whether it's relevant and material. The court can sustain an objection or, you know, allow further inquiry. But generally, a court doesn't use its discretion if the question is asked that has absolutely no foundation whatsoever. The foundation was that it was brought up during the direct examination. The only thing that was brought up was that he was retired. That doesn't bring it into some area of, you know, examination. He was fired. Because he says he retired doesn't mean he was fired. So the court can sustain an objection unless the attorney makes a nice offer of proof and says, Judge, he was fired, and I have information that shows me he was fired. So would you give me some leeway? Very often the defendant doesn't exactly have direct information on what a witness testifies to. If this is what somebody saw, somebody saw controlled by, and the question is, and the person says specifically, I saw this person sell X to Officer Y, the defendant definitely gets to come up and ask, did you really see that? Where were you standing? How did you see it? What exactly allowed you to make that? I don't think that analogy is working. Let me ask you something else. Is there anything that would have precluded the defendant from actually having the personnel file preserved for appeal? It was in the court. It was in the trial. The sealed personnel file? Is there anything that precluded that attorney from having the court preserve that so that we could look at it? The court was clearly not interested in taking Sergeant Robinson's personnel file. I understand. But was there anything that precluded the defendant from preserving this particular document for purposes of appeal so that this court could look at it in camera? I can't. Well, it wasn't that. Counsel could have asked the court. No, he did. Correct. So there's no offer of proof. Like, can we preserve this judge for our appeal? There's the good faith statement of an officer of the court saying that this record would, in fact, show that Sergeant Robinson was lying about his retirement. The court denied the attorney's request to conduct a 10-minute in-camera review. Is there anything that would have precluded counsel from preserving the subpoenaed file for this court to review our appeal? Certainly, trial counsel could have said, I would like to be impounded for the purposes of appeal. Would that have been an offer of proof? Would that have been an offer of proof? Would it have been sufficient so that it would get us here so we could look at it? Perhaps it would then be before this court, but it certainly wouldn't be before the defense, for example. I would not have been able to review it either. See, that's basically what the problem is. This was a fishing excursion, and he got some information from the officer. So the judge denies it. So even after the case is over, you subpoena the file. You do it in a post-trial motion. It's before the appellate court. Then we could look into it, and then we have all of the facts. So you're speculating on something. That's the problem. I understand the court's concern. What the proposed process that Your Honor is suggesting would put the burden on a pro se litigant to subpoena these records and file a pro se petition for post-conviction relief with the same speculation. It's a confidential personnel file, so the pro se post-conviction petitioner would not be able to He was represented by an attorney. I'm talking about what happened in the trial court. He had an attorney. He wasn't pro se. I understand that, Your Honor. And it's going to this whole idea that you have to make an offer of proof. Again, I do believe that the holding in Slayton does control here, where, again, in Slayton, the folder was not preserved even though it was offered to the court. The attorney in Slayton did not demand that it be impounded. The defendant was convicted. It came up on appeal, and this court remanded it back to conduct the in-camera review that didn't occur. It wasn't in Slayton that was harmless there. Ultimately, it was, but this court very clearly admonished the trial court to take 10 minutes to review these files when offered by a litigant who doesn't have access to them. You just said it was remanded. Correct, Your Honor. Well, not according to my reading. Your Honor. The court found the error in refusing to examine the folder was harmless. But maybe I'm incorrect. Yes, I'll address that during rebuttal and give the court a specific citation. According to the in-camera inspection request, was there ever a formal request to the trial judge for an offer of proof? There was never a formal request from the trial judge, as I know it, for an offer of proof. From counsel representing the defendant, was there ever a formal offer of proof made to the trial judge? Do you have the witness right there, Judge? Would you like to make a formal offer of proof at this point in time? Not while the witness was there. All right. What about an informal offer of proof? An informal offer of proof, I would say it was not while the witness was there. All right. Okay. But the question was then asked, and I believe that that was sufficient. Trial counsel should have been able to get an answer on the question. It was a topic raised by the State. He had a right to examine that topic to test the truth of the initial response. But doesn't the trial judge also have the discretion to limit cross-examination as long as it's relevant to what was on direct? I think, yes, and this was relevant to what was on direct. Is this what the trial judge basically did here? No. The question was asked on direct examination. Were you retired? How old are you? Are you still working? Trial counsel then tried to get into that information during cross-examination. The State objected, and the trial court sustained the objection. That question was made specifically, the question, how did you? It was a question, why were you, why are you retired? What's the basis for your retirement? That was asked. The entire line of questioning was cut off as far as we're concerned once the court sustained the objection. But that would have been a good question. Even if the officer testified that he had, in fact, retired, Officer Grayson maintained that he was retired before he eventually admitted that he was fired, it could have been a situation where the officer was offered that false choice between retirement and being fired. We just don't know. And that's the real problem with this case. There's a huge question mark holding over this defendant's conviction. Let's assume for the sake of argument that the trial court was incorrect and did fire him too early. What information do we have that would have changed the verdict? The question. I mean, is it automatic? Because a court limits cross-examination that automatically you get a new trial every time you do that. The question is could. Is that what we should write here? The question is could the evidence, if the damaging potential had been fully realized. But you can't tell me what the evidence is. You see, that's the problem. Nobody subpoenaed it. Nobody showed what it is. Everything is speculation. Well, trial counsel did subpoena the records. The court just refused to look at them. The court had a kind of see-no-evil, hear-no-evil approach to this case. And as a result, we had an incomplete record. And the lawyer did do that in this case. But they're private personnel confidential records of the officer's conduct. And so the only way that a lawyer could get these sealed documents is if they're relevant material. And that has to be established by whom? The proponent of the evidence. Right. And that's the problem. The proponent didn't even make an offer of proof. When the judge said, when that objection was sustained, going back to one of Justice Reyes's questions, he didn't make any offer of proof. He didn't say, Judge, I believe that we're going to be able to prove that he was fired just like this other officer. And here's why. That's what an offer of proof is. And don't the cases require that you make an offer of proof at the time, and then you also make that in your motion for a new trial to preserve it so that the courts can review it, and so that the trial judge can correct an error if they've made one at that time? Well, we believe that the case has established that a litigant has a right to examine, cross-examine a witness on a topic that was raised during direct examination. Since the court completely cut off any line of inquiry on this particular issue, I don't think that the litigant was required to provide any more evidence. He was barred from his constitutional right to cross-examine this particular witness. A second error occurred when the court refused to accept this personnel file. We believe the first error warrants a new trial, but at least the second error warrants remand for a limited review of this personnel file. And this Court's concern about an offer of proof, I understand that, but counsel said repeatedly and over and over again that he believed that in this personnel file that was in hand in court, it would show that Sergeant Robinson was lying about his retirement. And we believe this is relevant because, first of all, the State believed it was relevant. It brought it out during its direct examination and then highlighted his answer during its closing argument. We believe it's relevant because the Court found Officer Grayson's untruthful answer to be relevant and found him to be an incredible witness because of it. We also believe it's relevant because it goes to motive. The officer may have wanted to renew employment with the State, and this would have suggested that he would testify favorably. Is there evidence of that? There's never evidence of that, Your Honor. It's always a potential argument that could be made. No, but I mean, there's never any evidence. Couldn't the question have been asked of that officer? Perhaps it could have, but in Phillips, Adams, and Robinson, it was an inference, a potential inference that could be made. The officers were never asked that specific question. All right. And so for these reasons, we believe that the matter, if it is not sent back for a new trial, should be remanded for a limited remand hearing to determine whether this personnel file would have shown Sergeant Robinson was incredible. All right. Thank you. May I please support, Your Honors Counsel? The trial court did not err in limiting the cross-examination of Robinson regarding his retirement from the Robins Police Department. As Your Honors noted, at the time that the trial court made the limitation on the cross-examination, there was absolutely no information provided to the court at that time to make the ruling other than the one that it actually made, which was to limit the cross-examination. Certainly, the defendant does have a constitutional right to cross-examination. However, the evidence offered to impeach must raise an inference that the witness has something to gain or lose, and the evidence or the information can't be remote, can't be uncertain. It must be direct or positive. Here, the record does not show the defendant's constitutional rights were violated in any way, and the defendant simply was trying to challenge Robinson's credibility based on Grayson being found incredible. That is remote, that is uncertain, that is not information that is direct or positive, and the trial court ruled appropriately in this situation. As far as the state opening the door during direct examination, as with any witness, the people elicited background information. Was he employed, which he indicated that he was not. Robinson indicated that he had been retired and that at the time of this incident he was a sergeant for the Robins Police Department. He also indicated his age. He was 51 years of age. That's it. The people then went into the facts of this case. And so to claim that the people opened the door is really disingenuous because that certainly wasn't the case. And furthermore, it was brought out during cross-examination of Robinson that he confirmed that he had been retired because he was asked and he said, I retired, I retired from Robins Police Department. Certainly he wasn't allowed to go further into that, but he did confirm that he had been retired, which is the difference between him and Grayson. Grayson full-on admitted that he was untruthful during direct examination and indicated during cross-examination that he indeed had been terminated by the Robins Police Department. What's also important to note. And he was terminated because of some incomplete probationary status. Yes, probationary period. And that came out later through obviously Chief Davis' testimony. What's also important to note is that defense counsel had information about Grayson prior to trial, prior to Grayson's testimony, prior to Robinson's testimony. And that's because he got that information more than likely from the defendant whose sister had a run-in with this officer. Sure. Did he file a complaint against her? Absolutely. During opening statements, defense counsel actually made that argument. Defense counsel argued that Grayson, the evidence will show that Grayson was terminated from Robins Police Department, that he had an incident that involved a member of the defendant's family, specifically Charlotte Jones, the defendant's sister, and that there was a civil lawsuit pending in regards to that specific incident. Is an offer of proof required to preserve an error for appeal? I think at a minimum that defense counsel certainly had an opportunity to present an offer of proof. And no offer of proof was made in this case at any juncture. It was merely speculation, and it was purely because Grayson was found incredible, Robinson must be too. There must be something in his personnel file that would indicate the same as Grayson. Well, we don't know what's in that file because the judge just said I'm not going to look at this thing. And rightfully so. There was no access. What harm would it have been for her to just open the envelope, look at it, take, you know, less than two minutes, and, you know, close the book on this one way or the other? Your Honor, I submit respectfully that then every officer who takes the stand and says that they're retired or they're from a specific police department then is subject to their personnel file being reviewed by the court. Let me ask you this question and correct you. This officer in question, Robinson, right, is the officer that the trial court relied on in terms of saying, I find this officer credible and based on the officer's testimony. I find the defendant guilty. So their request is just merely to have this case go back, remanded back for any kind of review of the records. So based on that, since there was only the witness in question here is the only witness that the trial court found liable, where's the harm there just sitting in the back just to have the trial court review the records to determine whether or not there was anything there in the first place? Because, Your Honor, there has to be a preliminary showing of relevancy established. There has to be some sort of nexus. And here there wasn't a nexus. There wasn't a preliminary showing of relevancy in regards to Robinson. There was nothing. And there has to be that in order to be able to get to that second step and be able to review in camera the personnel file or whatever other document. And that wasn't the case here. Certainly that was the case with Grayson, and that was more than established. There was a nexus with Grayson. But there was no nexus, and there was no preliminary showing of relevancy. And it just wouldn't be fair. There has to be a preliminary showing of relevancy in order to even get to that step. What about the Slayton case that counsel is relying on to support a remand? In Slayton, Your Honor, there was evidence. Again, there was evidence that was material, information that was material, that could have potentially changed the outcome of the trial. There was really nothing like that. There was no evidence presented in that case that would have suggested that there was relevance to the felony review folder. But there was an inference that was made. Well, how was that made? And certainly there was the inference that there was some exculpatory evidence that could have been in that felony review folder because the prosecution, the people actually in that case. I'm sorry? The defendant made a pretrial motion for an in-camera review. This is before trial of the felony review folder based upon reports that he had that the state initially chose not to charge the defendant following a second interview with the victim. So there was information that was made as an offer of proof in that case. Absolutely. And I would argue that other cases a defendant cites to KS and Escarino, that's also in the same situation. There was information that was provided before the trial that indicated that there was relevant material information in KS. It was the school records from the therapeutic school where the defendant was accused of sexually abusing another student there. And in Escarino, it was in relation to DCFS records, again, where there was information that was provided to the court that the victim had made similar sexual abuse allegations against another individual. And the court there also ruled that that would have been material information and relevant to that could have possibly changed the outcome of the case. Again, as your Honor pointed, in Slayton and in those cases, that was all done before trial. And there certainly was information that was presented to the court. But jumping ahead, though, in the trial, isn't there a reason that you're supposed to object to something at the time, make your offer of proof, and then actually in your motion for a new trial, ask the court to grant the relief because this was your offer of proof, and now your offer of proof has shown this, and therefore. But there was no offer of proof here in relation to Robinson. Isn't one of the reasons for an offer of proof, for the first place to correct the error is in the trial court. If the judge makes a mistake and there's an offer, an adequate offer of proof made, and then the person makes that same request in their motion for a new trial, if the judge made a mistake in denying this inquiry or this line, the court can then correct its own error. But the most important thing is we're past that. Now we're here. And aren't we supposed to be able to look at something and see whether or not there is actually an error? How can we see if there's an error if we don't have that document ourselves? As Your Honor noted, there absolutely could have been an offer of proof in this case, but there wasn't, and I submit that there wasn't because there's no information. This was a fishing expedition. It was because Grayson was incredible, and he was found to have been untruthful, then Robinson must have been, too. There must be something in Robinson's file, even though there's no evidence, no information of any sort that indicated that in any fashion. Furthermore, the argument the defendant makes that by sheer nature of Robinson being 51 years of age and retired is inherently suspicious, that argument is also unappealing. I thought he said he worked 20 years total. Exactly. He was a police officer with law enforcement for 20 years. I don't think it's unreasonable to assume that someone with 20 years of service in law enforcement retires somewhere in your 50s, and also the argument that it's even more suspicious because he wouldn't receive Social Security benefits for 10 years. I believe most law enforcement, you pay into a pension system, you don't collect Social Security benefits anyway. So I would just argue that that argument is remote and moot. Is there any inference in the record at all with regards to this issue about that he wanted to curry favor because he wanted employment with the state? Your Honor, there is no information that he was seeking employment at that time. He just flat out indicated he was retired. There is no information that he had anything to gain or lose by his testimony. And again, what's different between this case and the cases that defendants said to Phillips, Robinson, and Adams, in those cases, all those officers were suspended at the time of their testimony. They were suspended, and the court found in each of those cases that they had something to obviously gain or lose, specifically lose by being reprimanded or by being further suspended in their employment. And so those cases are wholly distinguishable. And specifically in Robinson, the officer was on suspension for an act of violence and was scheduled to be reinstated only a few days later after the trial. And there the trial court obviously ruled that he could have been influenced by his desire to return to work and to avoid further suspension. And the other cases are, again, similar to that. Here, there is no evidence that Robinson was seeking employment, had anything to gain, and certainly that was not established. In regards to the limitation to the cross-examination, I would ask this court to take into account Davis and Coleman, both of those cases. Specifically in Davis, there the defense counsel tried to cross-examine the officer on a prior and a pending civil case against him that involved excessive force. And the officer, however, had not received any suspensions or any reprimands from his police department. And the appellate court there agreed with the trial court in limiting the cross-examination because the Davis court held that the showing of bias must be positive and direct and it cannot be remote and uncertain. And I would submit to this court that that is exactly what the – it wasn't even information. It was nothing that was provided to the court. And whatever it was, it certainly was remote and uncertain. And in regards to the in-camera review, as I indicated earlier, there has to be a preliminary showing of relevancy. And that certainly was not the case here. This case is very distinguishable from Slayton as the defendant did not prove any relevance of material information. And there was no nexus, absolutely no nexus, which clearly existed in the Slayton case. In summary, we would ask that you affirm the defendant's conviction. Thank you. Thank you. Brief rebuttal, counsel. Yes, Your Honor. Just a few things I'd like to clean up. With respect to Slayton, it was in the body of the opinion in Slayton, the court specifically says when we first examined the briefs in this case, the folder was not part of the record. We ordered the State to deliver the folder to the trial judge for an in-camera inspection. It was delivered and it was inspected. The trial judge found nothing in the folder that would have been helpful to the defense. The point being, the folder was not impounded and the case was briefed without the folder and it was then remanded back to the trial court with instructions to review the folder. When it was eventually reviewed and determined that it was not relevant, the court then wrote, the error turns out to be harmless, although it caused unnecessary delay in expenditure of the time and effort of the attorneys by this court and by the Illinois Supreme Court, which was asked to reverse our order for production and examination of the folder. We believe it is the trial court's obligation to ensure confidence in the outcome of the criminal trial. Refusing to examine possibly relevant documents does not further that goal. Investing 10 minutes or less in an in-camera inspection would have made this a non-issue. That's essentially what we're talking about here. We've spent more time at this oral argument than the court would have had to spend reviewing this personnel file. I think a couple other things to note. There are specifically two issues here. There's an issue with respect to a limitation on cross-examination. The defendant has the right to cross-examine on a topic that was raised during direct examination. We believe that the court needed to hear those questions, needed to observe the demeanor of the witness who's answering these uncomfortable questions to make a credibility determination. That specifically, in our opinion, warrants reversal for a new trial. Not reversal outright, just at least a new trial. The second issue is the introduction of these documents. The state seems to suggest that so much needs to be known by the attorney, and I believe this court is also concerned with the strength of the offer of proof. I want to be clear. The trial attorney did repeatedly say he believed that Sergeant Robinson had been fired. And in Slayton, the offer of proof was merely, at least according to the third paragraph, that the defendant knew that he hadn't been charged after the state interviewed the victim in the case. This court wrote, The trial court denied the motion finding the defendant failed to present sufficient facts to warrant an in-camera inspection of the felony review folder. The court reasoned that the defendant had nothing more than a suspicion about the exculpatory nature of the evidence contained in the felony review folder. And that's a common string along all of these cases. The trial attorney doesn't know what's in the proffered document and needs to know and can't review it himself or herself, so provides it to the court for an in-camera review. And without that in-camera review, then there's this big question mark hanging over the case. Was this a credible officer? Did he, in fact, testify truthfully? Did he have something to gain by testifying favorably for the state? So we think that Slayton is directly on point. It warrants a remand, at least for an in-camera review. We believe that the other cases warrant remand for a new trial because the defendant was denied his right to cross-examine. I will note that the State did specifically, this wasn't just a background question asked of the witness. The State specifically mentioned the retirement during its closing arguments and highlighted it. I think that that makes it extremely relevant to get into during cross-examination. And finally, the State's cases, Davis and Coleman, are distinguishable. Those cases don't involve discipline. Those cases involve simple cases filed against the particular witnesses. Here we're talking about the ultimate form of discipline, firing for misconduct. And that is the kind of evidence that's permissible to come in under Phillips, Adams, and Robinson. Thank you, Your Honors. All right. The case will be taken under Bison. Well-argued, well-briefed, and the court stands in recess.